

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00147-CR

Patrick **REYNA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR3501
Honorable Ron Rangel, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  February 28, 2018

AFFIRMED

A jury found Patrick Reyna guilty of felony assault against a person with whom he had a dating relationship. The trial court sentenced Reyna to eight years in prison. On appeal, Reyna argues the evidence is insufficient to support the jury's guilty verdict. We affirm.

### DISCUSSION

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). As the reviewing court, our duty is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Queeman*, 520 S.W.3d at 622. The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and we may not usurp this role by substituting our judgment for that of the jury. *Id*.

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2017). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(8) (West Supp. 2017). The offense is a family violence assault when the person has or has had a continuing relationship of a romantic or intimate nature with the complainant. *Id*. § 22.01(b)(2); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.004(3) (West Supp. 2017). The offense is a felony when it is shown at trial that the person was previously convicted of a family violence assault. *Id*. § 22.01(b)(2)(A).

Here, the indictment alleged that Reyna intentionally, knowingly, or recklessly caused bodily injury to Marylene Juanita Trevino, a member of his family, household, or a person with whom Reyna has or has had a dating relationship, by striking her with his hand, grabbing her with his hand, and by pulling her hair with his hand.[1] The indictment further alleged that Reyna was previously convicted of the offense of assault bodily injury–married.

At trial, the State called the complainant, Trevino, who testified in detail about the incident. According to Trevino, she had dated Reyna for about nine or ten months and had had an intimate

---

[1]The indictment also alleged in a second count that Reyna committed the offense of aggravated assault with a deadly weapon. However, the State dismissed this count and proceeded to trial solely on the count of felony assault against a member of Reyna's family, household, or a person with whom Reyna has or has had a dating relationship.

relationship with him. After Trevino and Reyna stopped dating, they continued to have sexual relations on occasion. In early January 2016, Reyna called Trevino and arranged a meeting with her. Reyna and Trevino met at a hotel in San Antonio, Texas, where they stayed for two nights and had sexual relations. After the second night, Trevino woke up, showered, dressed, and told Reyna that she was ready to go home. In response, Reyna told Trevino that she was not going to leave. When Trevino tried to leave, Reyna stood in front of the door and blocked it. Reyna then grabbed Trevino by both of her arms and threw her on the bed. Reyna pulled Trevino's hair with both hands and yanked her off the bed, causing her to fall on the floor. While Trevino was on the floor, Reyna hit her body with his hands and kicked her behind her leg. The hits Reyna delivered with his hands hurt. Trevino, who was very scared, "balled up" on the floor and covered her face. Reyna continued to hit Trevino with his hands. Trevino started crying because she was in extreme pain. Trevino pleaded with Reyna to stop, but he did not stop. Trevino told Reyna that she would stay. At this point, Reyna pulled out a gun and used the back of the gun to hit Trevino on the back and the top of her head. Next, Reyna grabbed Trevino by the hair and threw her against the wall. Trevino then dropped to her knees and told Reyna that she would do whatever he wanted so long as he stopped hitting her. Trevino was screaming, but Reyna told her to "shut up." Trevino could not stop crying because she was hurting. Reyna finally stepped back and stopped hitting Trevino.

Shortly thereafter, Reyna took Trevino's phone from her. Reyna looked through Trevino's phone and at her text messages, paying particular attention to the calls and messages that Trevino had received from other men. Trevino, who was still scared, remained in the hotel room with Reyna until later that day, when Reyna decided that they should go to a friend's house to get some food to eat. Reyna grabbed Trevino and held her close to him, and they walked from the hotel to Reyna's friend's house, which was a block or two away. While Reyna was distracted and helping his friend

move something at the house, Trevino left the house and ran to a nearby bar, where she called her mother to come pick her up. Trevino's mother picked her up and took her home.

A few days later, on January 13, 2016, Reyna called Trevino at her mother's house and told her that he was there. Reyna also messaged Trevino on social media. In the social media messages, Reyna made comments like: "Bitch don't get beat up," "ima go to your house better open or I'm going through da back," and "n you know I will." Even though Trevino was scared, she went outside to talk to Reyna. Trevino told Reyna that she was going to call 911. Trevino then called 911, and a police officer was dispatched to the scene. Reyna left before the police officer arrived. Trevino explained the situation to the police officer, showed him the bruises on her arms from the incident at the hotel, and told him that she was scared that Reyna was not going to stop. The police officer took Trevino to the police station, where she made a statement. Another police officer took photographs of the injuries on Trevino's arms, wrist, and forearms.

The State also called San Antonio police officer, Albert Silva, to testify. Officer Silva testified that he was assigned to a unit called the Crisis Response Team, which assists victims of family violence. On January 13, 2016, he interviewed Trevino, performed a threat assessment for her, and photographed her injuries, which consisted of bruises and redness on her arms and chest. Officer Silva said that while preparing a warrant for Reyna's arrest, he learned that Reyna had a previous conviction for assault bodily injury–married.

Finally, the State offered, and the trial court admitted, the photographs of Trevino's injuries, the social media messages Reyna sent to Trevino, and the judgment and other records related to Reyna's prior conviction for assault bodily injury–married.

Next, the defense called Matthew Broihier, the San Antonio Police Department officer who responded to Trevino's 911 call. Officer Broihier testified that Trevino told him about Reyna appearing at her mother's house and the hotel incident a few days before. Trevino said that when

she tried to leave the hotel, Reyna grabbed her by the arms and hair and pulled her back into the hotel room while punching her. Officer Broihier did not recall Trevino telling him that Reyna had used a gun to hit her. Officer Broihier confirmed that he had prepared an incident report which did not mention that a gun was used. Officer Broihier said that he did not see any trauma or bruises on Trevino's face. Nor did he see that Trevino had a busted lip, black eyes, or bumps. Officer Broihier did see that Trevino had red marks on her arms and bruises on her forearms. Officer Broihier stated that in his experience red marks can last "approximately up to an hour or two." Additionally, Trevino told Officer Broihier that Reyna had punched her in the face during the attack and that she had been covering her facial injuries with makeup for the last few days. Officer Broihier noted in his report that there were no visible injuries on Trevino's face. According to Officer Broihier, Trevino was very upset and excitable while telling him about the situation.

Although some inconsistencies may have existed in Trevino's accounts of the incident and the extent of her injuries, it was the jury's duty to resolve any conflicts in the evidence. *See Bohannan v. State*, No. 0347-15, 2017 WL 5622933, at *9 (Tex. Crim. App. Nov. 22, 2017). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Reyna committed the essential elements of the offense beyond a reasonable doubt.[2] Therefore, we hold the evidence is sufficient to support Reyna's conviction and affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish

---

[2]Although Reyna makes a separate argument that the evidence is factually insufficient to support his conviction, the court of criminal appeals has explained that no meaningful distinction exists between legal and factual sufficiency standards, and therefore, has held that "the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010).